ARCADIO MORALES, Plaintiff and Appellant, v. GREGORIO OTERO, Defendant and Appellee.

No. 7486. Argued February 3, 1938.—Decided July 20, 1938.

*Héctor González Blanes* for appellant.   *Dubón & Ochoteco* for appellee.

MR. JUSTICE HUTCHISON delivered the opinion of the court.

Plaintiff, in an action for damages caused by the negligent operation of defendant's truck, appeals from an adverse judgment rendered after the overruling of a motion for nonsuit.

The district judge in his statement of the case and opinion said it had not been shown that defendant was travelling in the truck at the time of the accident or that the truck was being used in defendant's business.   Later, in response to a request for additional findings, the judge found that: the truck which struck plaintiff was at the time of the accident, the property of defendant; the negligence of the truck driver was the sole and proximate cause of the accident and of plaintiff's injury; plaintiff, as the direct and immediate result of the accident and of the driver's negligence, had suffered a contusion on the breast accompanied by hemoptysis, a contusion on his back, a contusion on his right thigh and a number of abrasions on his body.   The judge refused, for want of sufficient proof, to find that the truck driver was defendant's employee and acting within the scope of his employment.

Oscar Morales, a chauffeur, testified as a witness for plaintiff in substance as follows:

Witness knew Gregorio Otero and knew what business Otero was engaged in; Otero had a truck which he used in the buying and selling of molasses; the license plate of the truck in April 1935 was H–927; Otero in 1935 was using the truck in the buying and selling of molasses; he was using the truck in that business; Jiménez Figueroa was an employee of Gregorio Otero; he was Otero's chauffeur and drove the Brockway truck H–927; (on cross examination) the interest which witness had in the case was that plaintiff, a brother of witness, had been knocked down by Jiménez Figueroa and left on the road; witness felt compassion for his brother; witness was interested in his brother's recovery of such damages as might be awarded to him under the law; witness was commissioner (*comi-*

*sario*) for the Buena Vista ward of the municipality of Bayamón; Otero lived in the Bucarabones ward of the municipality of Toa Alta, some seven kilometers from Bayamón; witness on several occasions had gone to Bucarabones to purchase molasses from Otero; witness did not remember the date, in 1934 and June 1935; he had gone in his capacity as chauffeur, employed as the driver of a truck and some one went to purchase twenty drums; witness as chauffeur; witness went as chauffeur, twenty drums of molasses; witness had accompanied Ramón Figueroa and Antonio Hernández; Figueroa lived on Comerío Street; witness went with Figueroa in June 1935, after the accident; Antonio Hernández lived in Barrio Nuevo, Bayamón; Ramón Figueroa purchased twenty drums; Antonio Hernández was the owner of the truck and had contracted to go for it; he did not buy the molasses; witness was the driver; Antonio Hernández did not buy the molasses, he was the owner of the truck; Ramón Figueroa went to purchase twenty drums at $3.30; Hernández was the owner of the truck, he did not buy any molasses; in 1934, witness had gone with other persons; Antonio Hernández was the owner of the truck; witness had not previously stated that he had gone in 1934 to purchase molasses for Antonio Hernández, and later in 1935, for Ramón Figueroa; witness did not go to purchase molasses in 1934, he was the truck driver; it was Constantino Fernández who purchased the molasses; Fernández was at the time of the trial in Spain; it was in September 1934 that witness went as the chauffeur of Constantino Fernández to purchase molasses; Fernández went on several occasions to purchase five drums which was the capacity of the truck; two or three times in 1934; while witness was acting as chauffeur it was always the purchaser who went with a truck and with witness as chauffeur to transport the molasses; on such occasions, the molasses purchased by Ramón Figueroa and Constantino Fernández had been transported on a truck driven by witness; witness himself had never purchased molasses from Otero; Jiménez Figueroa had been an employee of Otero for some three years; purchasers of molasses dealt with him when they went to buy; he was in charge of the molasses, Jiménez Figueroa, acting as chauffeur; on the day of the trial in the Municipal Court of Toa Alta, Jiménez Figueroa had stated that he was employed by Otero; the judge had asked him who was the owner of the truck and he had answered, Gregorio Otero; witness had seen Jiménez Figueroa on various occasions before and after the accident and Jiménez Figueroa had told witness that he was Otero's employee; Jiménez Figue-

roa had told witness that at the Central Constancia while loading molasses in 1934–35, in November 1934, before the accident and in January and July 1935—in July 1935 at the Central Constancia in Toa Baja; in November 1934, witness had asked Jiménez Figueroa how much he earned and he had answered $9.00 a week; witness had seen Jiménez Figueroa again in January at the Central Juanita; witness had not talked to him since the day of the trial in the municipal court.

We find no serious discrepancy between the testimony of this witness on direct examination and his testimony on cross-examination. He did not say either on direct or on cross-examination that he himself had purchased molasses from Otero and he made it perfectly clear that he merely drove the truck used by Ramón Figueroa and Constantino Fernández in the transportation of the molasses purchased by them. From the fact that these two purchasers hired a truck for the transportation of the molasses purchased by them, it does not follow that Otero did not use his own truck in delivering molasses sold by him to other purchasers. Much less does it follow that he did not use his own truck in his business of buying and selling molasses. The two statements brought out on cross-examination that Jiménez Figueroa was loading molasses at the Central Constancia in November 1934, and that purchasers of molasses dealt with Jiménez Figueroa, who was in charge thereof as Otero's chauffeur, remained intact.

Oscar Morales was a loquacious witness, but he talked quite as freely on cross-examination as on direct. Apparently he did not pay very close attention to the questions put by counsel and his answers were not premeditated. They were not always responsive. Near the close of the cross-examination, the judge told him that if he was careful to hear the question, he would find that he could answer it without reference to other matters. We find no evidence of deliberate evasion. We think his testimony, as a whole, established the fact that the truck H–927 was used by Otero

in his business. There is nothing to show that it was ever used in any other way by Otero or by anyone else. The case—even as to the question here under consideration—does not depend entirely upon the testimony of Oscar Morales.

The ownership of the truck H–927 at the time of the accident was established by a certificate from the Department of the Interior. There was, as we have shown, a specific finding to the. same effect. There was a specific finding that the negligence of the truck driver was the proximate cause of the accident and of plaintiff's injuries. In *Sánchez* v. *Asiatic Petroleum Co.*, 40 P.R.R. 98, this court held, as stated in the syllabus, that:

"Where a person or his property is negligently injured on the highway by a vehicle belonging to a business or undertaking, the injured party is not required to prove directly that the vehicle was being operated at the time by an employee of such business or undertaking and that such employee was acting within the scope of his employment."

See also *Lotti* v. *The Charles McCormick Lumber Co.*, 51 P.R.R. 323.

In *Guzmán* v. *Ortiz*, 39 P.R.R. 170, 173, we quoted with approval from 5 Wigmore (second edition) 502, the following extract:

"(2) Where damage is done by the tortious act of the driver of a vehicle, and the injured person sues the owner of the vehicle, who was not the driver, it is a necessary part of the plaintiff's case that the driver was an agent of the owner and was acting at the time within the scope of his employment. May these two facts be presumed from the fact of ownership? The answer should be affirmative, if we consider the relative facility of proof as between the parties, the ordinary habits of owners of vehicles, and the wisdom of placing the risk of not obtaining evidence upon the person who owns a valuable and dangerous apparatus and therefore should take special precautions against its misuse by irresponsible persons. The reckless irresponsibility of motorists in general, their notorious selfishness in monopolizing the highway against pedestrians, and the prevalence of homicide by motorists who set no value on the lives of

others in comparison with their own convenience—all these modern facts demand that the present rule, and every other applicable rule, be employed to improve the standard of care obeyed by vehicle-owners.

"Nevertheless, Courts have here taken opposite views; some Courts leaving upon the innocent pedestrian the entire burden of producing evidence; in general, the Courts are here apt to take an unpractical, inhumane, and overcautious attitude."

This disposes of the question as to whether the truck driver in the instant case was an employee of the defendant and acting within the scope of his employment.

If plaintiff herein had been struck by a touring car occupied by defendant's wife and children, there might be some force in the argument for appellee that this, without more, would not suffice to establish the fact that the car was being used in defendant's business at the time of the accident. But defendant's truck was not a touring car. It was not being used as such at the time of the accident. If it was not being used in defendant's business, it would have been a very simple matter for defendant or his chauffeur, Jiménez Figueroa, to take the stand and say so. The fact, whatever it may be, was a fact peculiarly within the knowledge of these two. "The relative facility of proof as between the parties" was much the same as it would be in the matter of agency or scope of employment. From the fact that plaintiff, while on the public highway, was struck by defendant's truck, it is a fair inference, we think, that the truck was being used in defendant's business, because ordinarily a truck is used in connection with the owner's business, not for his pleasure nor for the enjoyment of others. Other considerations *supra* which tend to support the presumption as to agency and scope of employment do not militate against the propriety of such an inference. But this is not all. The truck was travelling apparently from Toa Baja, where the Central Constancia is located, toward Toa Alta, the place of defendant's residence. It carried a load of molasses. Defendant

was in the molasses business. All of these circumstances, with or without the testimony of Oscar Morales, established a *prima facie* case as far as the question concerning any necessary connection between the truck and defendant's business was concerned.

The judgment appealed from must be reversed and in lieu thereof the judgment of this court will be rendered in favor of plaintiff for $495 and costs, without attorney's fees.

Mr. Justice De Jesús took no part in the decision of this case.